## YEATON *versus* YEATON & *als.*

Where evidence is introduced on trial, without objection, as to the *terms* of a vote passed by a proprietary, and no question is raised concerning *them*, the presiding Judge may rightfully instruct the jury as to the *effect* of such vote.

But if any question arises of what in truth were the *terms* of the vote, that *fact* is determinable only by the jury.

ON EXCEPTIONS from *Nisi Prius*, TENNEY, J., presiding.

TRESPASS *quare clausum*. One defendant pleaded title in himself, and the others justified as his servants.

The *locus in quo* was a strip sixteen rods wide on the easterly end of Lot No. 98, as claimed by plaintiff, and on the westerly end of Lot No. 101, as claimed by defendants, in Belgrade.

The plaintiff derived his title to the southerly portion of Lot No. 98 from Christopher Dunn, through mesne conveyances, and introduced office copies of their deeds, from Sam'l Stuart, to George Penny, and from Penny to Dunn; but no grant from the original proprietors.

The defendant's title to Lot 101, originated in a grant from the original proprietors, to the heirs of William Bowdoin in June, 1795.

Evidence was introduced, that only two plans of the territory had been made for the proprietary, one by Obadiah Williams in 1791, and the other by Jones & Prescott in December, 1795.

By the plan of Williams, the land in dispute belonged to plaintiff's lot, but by Jones & Prescott's plan, it belonged to the defendant's lot.

The defendant showed, by Reuel Williams, that the plan of Williams was found to be very defective, and that Jones and Prescott were directed by the proprietary to make a new survey and plan, which they did, and which was adopted by the company, and all grants since made had been done according to that plan. The company kept a record of all grants by them made, which was in his possession, and he had examined so far as he was able, but could find no grant of Lot No. 98,

although from a memorandum found in his own writing, he believed that a grant had been made of it since 1803; that at some time the proprietary had voted that, when the lots granted to members, according to plan of Williams, fell short, the deficiency should be credited to the grantees, and when they overrun, the excess should be charged to them.

A copy of the grant and vote of the proprietary will be found in the opinion of the Court.

The plaintiff contended that the title to lot No. 101, vested in the heirs of William Bowdoin in June, 1795, by virtue of the vote and grant of that date; that as the plan of Williams was the only one then in existence, the grant must have been made with reference to that plan; and argued that the vote of 1797, was not one extending lot No. 101 to the line run by Jones and Prescott, but the one referred to by the witness, Mr. Williams.

But the Judge instructed the jury that though the grant of June, 1795, vested the title in the grantees, it was competent for the proprietary subsequently to extend the lot granted to the line of Jones and Prescott, and that by the vote of 1797 they had done so.

There was no evidence of what this vote of 1797 was, other than what appeared in the record copies of the grant, and in the testimony of the witness.

A verdict was returned for the defendants, and the plaintiff excepted to the foregoing instruction.

*Paine* and *Bean,* for plaintiff, objected to the instruction given on the following grounds : —

1. Because it assumed on the evidence of the recital, to determine as matter of fact that there had been such a vote.

2. Because it assumed that there had not been a prior grant of lot No. 98, according to Williams' plan.

3. Because a fair construction of the vote, as recited, is not an enlargement of the lot.

*Bradbury,* for defendants, argued the following points in support of the instruction.

1. The grant of lot No. 101, to Wm. Bowdoin's heirs, under whom the defendant, Richard Yeaton, claims, carries the title according to Jones and Prescott's plan, and by that plan the *locus* belongs to that defendant. *Hatch* v. *Kimball*, 16 Maine, 146; *Colby* v. *Norton*, 19 Maine, 412; *Milliken* v. *Coombs*, ß Maine, 343; *Doloff* v. *Hardy*, 26 Maine, 545.

2. The ruling of the Judge is in effect that the vote and grant are sufficient in form to give title, and so they are.

3. The plaintiff was not prejudiced by the instructions, for he had no title, and the verdict should not be disturbed.

RICE, J. — The plaintiff, John Yeaton, is the owner of a part of original lot number 98, and the defendant, Richard Yeaton, has title in part of original lot number 101. These lots abut upon each other. The land in dispute is a strip sixteen rods in width, and is claimed by both of the parties, as being part of their respective lots.

In 1791, one Williams surveyed the lands in that neighborhood, belonging to the proprietors, including numbers 98 and 101, and made a plan thereof. By that plan, the land in dispute constitutes a part of lot No. 98.

December 14, 1795, Jones & Prescott surveyed and made a plan of the same lands. By their plan, the disputed land is a part of number 101.

Reuel Williams, a witness called by defendants, testified, that the plan of Williams was found to be very defective, and that Jones & Prescott were directed by the proprietary to make a new survey and plan, which they did in 1795, and which was then adopted by the company. Since that time the grants had always been made according to Jones & Prescott's plan; Williams' plan was then repudiated, and has not been known as a plan since, nor any grants made by it.

The defendant, Richard Yeaton, (the other defendants justifying under him) pleaded soil and freehold, and as evidence of title to the *locus in quo*, introduced a grant from the original proprietors to the heirs of William Bowdoin, the ancester of his grantor, dated March 6, 1800, which recites, that the proprietors, " at a legal meeting, held at Boston, this third day

of June, A. D. 1795, called and regulated according to law, have voted, granted and assigned to the heirs of William Bowdoin, Esq., and their heirs and assigns forever, the following lots of land situate, lying and being in Washington, so called, now Mt. Vernon and Belgrade, in the county of Kennebec, and Commonwealth of Massachusetts, being marked and numbered one hundred thirty-nine, one hundred eighteen and one hundred and one, containing two hundred acres each, and delineated on a plan of said township, made by John Jones and Jedediah Prescott, dated Dec. 14, 1795, reference thereto being had, will more fully appear, and agreeably to a vote of the proprietary passed the 19th day of June, 1797."

The plaintiff showed no original grant of lot No. 98. At the time of the vote of June 3, 1795, by which No. 101 was granted to the heirs of Wm. Bowdoin, the survey and plan of Jones & Prescott had not been made, and the plaintiffs, therefore, contended that the lot which passed by that vote and the grant issued in 1800, extended only to the line indicated on the plan of Williams, which excluded from No. 101 the *locus in quo*. But upon this point the Judge instructed the jury, " that though the grant of June 3, 1795, vested the title in the grantees, it was competent for the proprietary, subsequently, to extend the lot granted to the line of Jones & Prescott, and that by the vote of 1797, they had done so."

The objection is, that by this ruling, the Court determined a fact which should have been referred to the jury.

To determine whether instructions are correct or otherwise, reference must always be had to the facts as they are then presented. The case finds, that there was no other evidence of what this vote in 1797 was, than what appeared in the record copies of this grant, and in the testimony of Mr. Williams. The original record of the vote passed in 1797, or a copy thereof, would have presented evidence of a higher and more satisfactory character. But this evidence of the vote was introduced without objection; it was uncontradicted, unexplained and uncontrolled by any other facts then before the Court. The evidence of the terms of the vote pass-

ed in 1797, being thus before the Court, it became proper for the Judge to instruct the jury as to the effect of that vote. Had there been any question as to what were in fact the terms of the vote in 1797, that question should have been settled by the jury as a matter of fact. But no such question appears to have been raised at the trial. In view of the case as then presented, we do not perceive, that there was any error in the instructions. The exceptions are therefore overruled.

SHEPLEY, C. J., and APPLETON and CUTTING, J. J., concurred.